# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ALBERT J. QUINTANA,

        Plaintiff,

vs.                                                   Civil No. 98-1223 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed June 29, 1999 **[docket # 7]**. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff was 43 years old at the time of the administrative decision. Plaintiff has not worked since May 1978, the date of his alleged onset of disability, when he was 24 years old, due to lower back pain.[1] He has a GED, and no past relevant work experience within the last 15 years.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application, concluding that Plaintiff has the residual functional capacity for a full range of sedentary work. The Appeals Council denied Mr. Quintana's request for

---

[1] Plaintiff is only being considered for SSI benefits beginning with his applications which were protectively filed on December 9, 1994, through the date of the ALJ's decision on January 31, 1997. He was last insured for disability benefits on June 30, 1981.

review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's finding that Plaintiff's ability to perform sedentary work is unsupported by substantial evidence is legally erroneous; (2) the ALJ's credibility determination is unsupported by substantial evidence and is legally erroneous; (3) the ALJ erred in failing to consider evidence of Plaintiff's mental impairment; and (4) the ALJ failed to accord any weight to Plaintiff's receipt of Workers' Compensation and state disability retirement benefits.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

    7. The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

    8. Plaintiff has not worked since he injured his back in a work-related accident in 1978, for which a laminotomy with excision of a protruded disc was performed. Mr. Quintana describes his back pain as "real hot" extending down his back and shifting to either the right or left leg. He told the ALJ that his legs feel numb and cold at times and that he needs to keep his legs moving. On a scale of 1 to 10, Mr. Quintana describes his pain as an "8" on a scale of "1 to 10" and as occurring "almost all the time." Tr. at 188-89. He takes Tylenol with codeine which "helps some."

    9. Plaintiff lives alone in a house he and his ex-wife built, and stated that his mother, sisters and friends come over to help. He said that they have been doing this since 1978. Plaintiff was incarcerated for attempted murder between 1988 and 1993. During this period he earned 17

3

college credits, and worked as a librarian in the prison chapel. He did not continue college credit in prison because he was told by the instructor that his frequent getting up to relieve his back pain was disruptive. Tr. at 186-87. Mr. Quintana told the ALJ that he never followed up on continuing the credits outside of prison because he would still need to change positions frequently during class, and thought that would be a problem.

10. Mr. Quintana does some of his cooking in the microwave. His friends or family assist with the shopping. Tr. at 181-82. He can drive only 5 or 10 minutes before he needs to stop and stretch. He spends his days walking around the house, soaking in a hot tub 3 to 4 times a day and lying down for 15 or 20 minutes at a time. Tr. at 191. Plaintiff stated that he can sit for about 15 minutes, stand for 10 minutes, walk for 15 to 20 minutes and needs to change positions frequently. He told the ALJ that he can lift 10 to 15 pounds. Tr. at 192 -93. Mr. Quintana testified that he is depressed because he can't do the things he used to do and that he is moody, anxious and nervous. Tr. at 191.

**First Alleged Error**

11. Plaintiff first alleges that the ALJ erred in finding that Plaintiff can perform sedentary work. Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. SSR 83-10; 20 C.F.R. § 404.1567(a).

12. Residual functional capacity ("RFC") is based on medical history; medical signs and laboratory findings; effects of treatment, including limitations or restrictions imposed; daily activities; recorded observations; medical source statements; effects of symptoms, medical source statements, evidence from attempts to work. SSR 96-8p; see also 20 C.F.R. 404.1545.

4

13.  The ALJ adopted the medical findings of Drs. Espinoza, Hayes and Bjorklund.  Tr. at 16, 19.  Dr. Espinoza completed an RFC assessment on Mr. Quintana and found that he could lift 10 pounds occasionally, 5 pounds frequently; could stand or walk with interruption for one hour;[2] sit for a "total" of 20 minutes and 5 minutes without interruption.  Tr. at 127-28.  Although the doctor's findings were based on Plaintiff's statements, Dr. Espinoza indicated that they were also supported by the physical exam.  Tr. at 128.

14.  An inability to sit for a total of six hours out of an 8-hour workday is inconsistent with a finding that Plaintiff can perform sedentary work, thus making the ALJ's finding legally erroneous.  See Jimenez v. Shalala, 879 F.Supp. 1969, 1074 (D.Colo. 1995);  Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993) (plaintiff who could sit for only 4 hours total a day and had testified that he could not sit for more than 15 or 20 minutes at a time without having to walk for 10 or 15 minutes could not perform full range of sedentary work).  Further, Mr. Quintana testified that he needed to change positions frequently.[3]  An individual who must alternate sitting or standing "is not functionally capable of doing either the prolonged sitting contemplated in the definitions of sedentary work. . . ."  Talbot v. Heckler, 814 F.2d 1456, 1463 n.5 (10th Cir. 1987).

15.  Dr. Espinoza's report is not inconsistent with both Plaintiff's testimony and with the rest of the medical evidence in the record.  The record contains medical evidence that Plaintiff sought treatment for persistent back pain after his laminotomy in 1978.  When Dr. Espinoza

---

[2] The form indicates a number which looks like "10" but Plaintiff reads as "70 or 90 minutes."  Mem. at 3-4.  One would assume the amount of time Plaintiff can walk or stand *uninterrupted* would be less time than the one hour he can do so *with* interruption.

[3] My findings on this first issue necessarily encroach on the credibility issues but are not precluded by the ALJ's finding of noncredibility.  See discussion, below.

examined Plaintiff in March 1995,[4] the doctor noted that Plaintiff complained of pain and changed positions throughout the interview. Tr. at 124. He noted spasm in Plaintiff's back muscles, even though range of motion was normal. Tr. at 126. In April 1996, Dr. Bjorklund opined that Plaintiff had "stable chronic back pain" and prescribed Flexeril since Plaintiff indicated that muscle relaxants had helped in the past. Tr. at 131. A medical note from August 1996, states that Plaintiff appeared to be in pain and "can't stay sitting too long." The treating physician prescribed Imipramine and recommended Plaintiff avoid alcohol. Tr. at 129. In November, 1996, Dr. Hayes saw Mr. Quintana and reported that Plaintiff stated that he "has constant pain" which tends to get worse in bad weather. Tr. at 144.

16. Unskilled types of jobs are particularly structured so that a person cannot sit or stand at will.[5] SSR 83-12; Jesurum v.Sec'y of Dept. of Health & Hum. Serv., 48 F.3d 114, 120 (3rd Cir. 1995). Because the record establishes that Plaintiff cannot sit or stand for prolonged periods of time, the ALJ should have consulted a vocational expert before making a determination regarding his ability to perform sedentary work. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993).

**Second Alleged Error**

17. Plaintiff next contends that the ALJ's credibility determination is unsupported by substantial evidence and is legally erroneous. The ALJ concluded that Mr. Quintana's pain was

---

[4] The record does not contain evidence of any medical treatment given after this point until March 1995. However, there is evidence of the *fact* that Plaintiff was seen between 1979 and 1984. Tr. at 72, 145, 177-80. There is also some evidence that during the period between 1988 and 1993 when Plaintiff was incarcerated, he received medical treatment for his back pain. Tr. at 72, 124, 184.

[5] In this case, the ALJ determined that Plaintiff's skills were not transferable. Tr. at 20.

6

not of a disabling degree and also determined that Plaintiff exaggerated pain symptoms.  Tr. at 19.[6]

18. Several factors are relevant in determining the credence given to a claimant's statements of disabling pain, including the levels of medication [taken] and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

19. The ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain.  Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted).  The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Id. (quotation omitted).  However, the ALJ may consider the claimant's activities in discounting subjective complaints.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987).

20. Here, the ALJ's finding of noncredibility with regard to disabling pain was not based solely on Plaintiff's daily activities.  The record supports the finding that Plaintiff obtained considerable relief with conservative treatment (e.g., muscle relaxants, ibuprofen).  Tr. at 124, 131, 188.  Also, the ALJ is entitled to take into account subjective measures of credibility that are

---

[6] Although the ALJ relied on Fifth Circuit case law relating to credibility inquiries, her findings would support the same conclusions of nondisability under Tenth Circuit case law, which is based on the same underlying premise: pain must be severe enough to preclude employment.

peculiarly within her judgment, including whether a claimant is exaggerating symptoms for purposes of obtaining government benefits. Courts should generally defer to the ALJ's assessment of credibility in such a case. See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

21. The ALJ determined that while Plaintiff did experience pain as a result of the "laminectomy, sinusitis and alcohol abuse," Tr. at 20, his pain was not disabling.[7] To be disabling, pain must be so severe, "by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988). Thus, the ALJ did not err in finding Plaintiff not to be credible.

**Third Alleged Error**

22. Plaintiff next alleges that the ALJ erred in failing to consider evidence of Plaintiff's mental impairment. I find no error on this issue. The record contains a psychiatric assessment from March 1997; treatment notes spanning March to May 1997; and notes from a Dr. Perry, a physician who diagnosed Plaintiff with diabetes. These reports post-date the ALJ's decision and were before the Appeals Council, which concluded that the evidence did not provide a basis for changing the ALJ's decision.

23. Dr. Perry diagnosed Plaintiff with "mild depression and anxiety" secondary to the back injury and pain and lack of exercise, Tr. at 168. The March report also found Plaintiff had difficulty with "feelings of uselessness, thought content, loss of memory and sporadic sleep." Tr.

---

[7] Based on the record, Plaintiff had periods of attempted sobriety, but was unable to follow several doctors' advice to avoid alcohol. Tr. at 131, 129, 166. Under recent social security law, an individual is no longer entitled to benefits if alcoholism or drug addiction is a contributing factor material to a determination of disability. Pub.L. 104-121, § 150(a)(1), (b)(1) (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)(1997)).

at 168. The March 1997 report states that Plaintiff attributed feeling "down" because he was not getting enough exercise. Id. None of the reports found evidence of suicidal ideation, hallucinations or delusions.

24. Other treatment notes during that time from the Rio Arriba Counseling Center noted that Plaintiff continued to drink and solicit "street" Valium. Tr. at 159-61. Plaintiff said that he needed Valium to try to stay away from drinking and that he sometimes drank to get rid of the back pain. Tr. at 168. He was diagnosed with "active alcohol abuse" and depression. Tr. at 165. However, the doctor was unable to "evaluate the true degree of [depression] while drinking" and that psychological treatment was "too risky" while Plaintiff was actively drinking. Id.

25. The social security regulations set out a special procedure to be followed when a record contains evidence of a mental impairment that allegedly prevented claimant from working. 20 C.F.R. §§ 404.1520a(a) & 416.920a(a) (citing Hargis v. Sullivan, 945 F.2d 1482, 1487 (10th Cir. 1991). Here, the psychological reports and treatment notes do not constitute evidence of a mental impairment which would trigger these special procedures. Plaintiff's discussions with the counselor wrapped around his relationship with a woman he was seeing, Tr. at 160, 162, 163, anxiety from his land being flooded by neighbors, or the general trouble he was having relaxing. Tr. at 161, 162.

26. Neither was there error based on the case not being remanded by the Appeals Council so that this evidence could be considered by the ALJ. Evidence is normally not considered when presented for the first time on appeal. Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996) (citation omitted). Remand is only appropriate to consider such evidence, however, when it qualifies as (a) new, (b) material, and (c) related to the period on or before the

9

date of the ALJ's decision. See O'Dell v. Shalala, 44 F.3d, 855, 858 (10th Cir. 1994); 20 C.F.R. § 404.970(b). I find that even if the evidence relating to Plaintiff's mental impairment could be considered "new" and related to the relevant period, it would not have changed the outcome of the decision. See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991). Further, there is ample evidence to regard Plaintiff's alcohol abuse as contributing to his mental impairment.[8] Thus, this evidence was not entitled to be considered either as "new evidence" or as evidence which was subject to special procedures under the regulations.

**Fourth Alleged Error**

27. Last, Plaintiff contends that the ALJ failed to accord any weight to Plaintiff's receipt of Workers' Compensation and state disability retirement benefits. This ground has no merit. A disability decision made by another governmental or nongovernmental agency is not determinative of disability and is therefore not binding on the Secretary, but is, nonetheless, entitled some weight. Eason v. Chater, 951 F.Supp. 1556, 1562 (D.N.M. 1996).

28. The stringent standards applied under the Social Security Act differ markedly from those relied on for an award of benefits under either the Workers' Compensation statute or the retirement disability plan Plaintiff paid into during the 5 years he worked as a city maintenance worker. Workers' Compensation, e.g., provides payments for a simple reduction in functional capacity, whereas the Social Security Act provides benefits only where the claimant is unable to perform any work that constitutes substantial gainful activity. But, c.f., Thomas v. Weinberger, 398 F.Supp. 1034, 1036 (D.Kan.1975) (100% disability benefits from Veterans Administration

---

[8] See previous footnote regarding ineligibility for benefits when a claimant's alcohol or drug abuse contributes to a finding of disability.

("VA") is "persuasive" evidence "of the fact of disability); Rodriguez v. Schweiker, 640 F.2d 682, 686(5th Cir.1981) (VA rating of 100% disability "should ... [be] closely scrutinized by the ALJ").

29. Although mention of these other benefits was not specifically included in the decision, the ALJ is "not required to discuss every piece of evidence". Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996). Nor is this lack of detail reversible error under the circumstances presented by this case, since the ALJ did consider these other benefits at the hearing in her questions to Mr. Quintana. Tr. at 174, 176.

30. In sum, I find that (1) the ALJ's finding that Plaintiff's ability to perform sedentary work is unsupported by substantial evidence is legally erroneous; (2) the ALJ did not err with regard to her credibility determination; (3) the ALJ did not err when she did not consider evidence of Plaintiff's mental impairment; and (4) the ALJ did not err in not according any weight to Plaintiff's receipt of Workers' Compensation and state disability retirement benefits.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 7]** be granted in part in that this case be remanded to the Commissioner in order that a vocational expert be consulted with regard to Plaintiff's ability to perform sedentary work in light of his postural limitations, i.e., his need to change positions frequently. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE